### JACOBY v. KELLEY et al.

(Circuit Court of Appeals, Third Circuit. March 10, 1924.)

No. 3010.

1. **Courts** ⬦⟾352—**Withdrawal of juror governed by practice of state court.**

The refusal to withdraw a juror is reversible error in the federal court, in a case in which it would be reversible error under the ruling of the courts of the state in which the trial is had.

2. **Appeal and error** ⬦⟾973—**Trial** ⬦⟾146—**Refusal to withdraw juror held not error.**

Under the practice of the state courts of New Jersey, the withdrawal of a juror rests in the trial court's discretion, and is not assignable as error, and the refusal to withdraw a juror because of testimony, in an action against an automobilist for personal injuries, tending to show that defend-

⬦⟾For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ant carried insurance, was not error, in view of instructions to leave such testimony out of the case entirely.

**3. Evidence ⬤⟹558(8)—Cross-examination of medical expert held not prejudicial, but relevant to his qualifications.**

Where defendant's medical expert, who testified as to injuries to plaintiff's liver, on cross-examination voluntarily introduced the subject of the kidney, cross-examination as to his experience in injuries to the kidney *held* not to prejudice defendant, but relevant on his qualifications.

**4. Master and servant ⬤⟹354—Compensation paid for injuries properly withdrawn from jury's consideration in action against wrongdoer.**

In an action against a jitney driver for injuring a messenger boy, the court properly withdrew from the jury's consideration amounts paid as compensation by the boy's employer, since, under Act N. J. April 1, 1913 (P. L. p. 311), § 8, amending Workmen's Compensation Act, § 23, it in no wise affected the driver's direct liability.

**5. Municipal corporations ⬤⟹706(6, 7)—Negligence and contributory negligence in operating vehicles held for jury.**

In an action for injuries to a messenger boy on a bicycle, struck by a jitney, negligence and contributory negligence *held*, under the evidence, for the jury.

In Error to the District Court of the United States for the District of New Jersey; John Rellstab, Judge.

Action by Benjamin Kelley and another against Byron S. Jacoby. Judgment for plaintiffs, and defendant brings error. Affirmed.

Joseph A. Corio, of Atlantic City, N. J. (John C. Reed, of Atlantic City, N. J., of counsel), for plaintiff in error.

Collins & Corbin, of Newark, N. J., Aaron L. Simon, of Passaic, N. J., and Charles W. Broadhurst, of Newark, N. J. (Edward A. Markley, of Jersey City, N. J., of counsel), for defendants in error.

Before BUFFINGTON and WOOLLEY, Circuit Judges, and THOMPSON, District Judge.

THOMPSON, District Judge. Benjamin Kelley, a minor, by his next friend, Julia Kelley, and Julia Kelley, in her own right as mother of Benjamin Kelley, brought suit against Byron S. Jacoby to recover damages for personal injuries alleged to have been sustained by the son, and for expenses and loss of services thereby sustained by the mother, through Jacoby's alleged negligence in operating an automobile, causing a collision with a bicycle upon which Benjamin Kelley was riding. The accident occurred at Atlantic City on April 5, 1922, about 7:30 p. m., after dark, on New York avenue, which runs approximately north and south and is 30 feet wide between curbs. Belfield avenue, 6 feet between curbs, leads into New York avenue from the west. About 30 or 35 feet to the south of Belfield avenue, Memorial avenue, 16 feet wide between curbs, leads into New York avenue from the east. Neither of these avenues crosses New York avenue.

Kelley, who was 15 years of age, was employed by the Western Union Telegraph Company as a messenger boy and was accustomed to use a bicycle upon his errands. On the night in question, he was sent from the office of the telegraph company to the Richland Hotel on Kentucky avenue. On the return trip, while performing this service on his

bicycle he used Belfield avenue as part of his route, and rode east thereon, turning south, to his right, into New York avenue. Jacoby, who was a jitney driver, was driving his automobile north on New York avenue, and, as he approached Belfield avenue, his automobile and the bicycle on which Kelley was riding collided, throwing the lad to the ground, and causing him serious injuries.

At the trial, Kelley's testimony tended to show that, when he turned to the right into New York avenue, automobiles were parked along the west curb of New York avenue near and south of Belfield avenue; that he kept to the right side of the street, to the left of the standing automobiles; that, as he was riding on the right side of the street, proceeding slowly, with a light on his bicycle, Jacoby's automobile, going about 16 miles an hour, turned across to his (Kelley's) side of the street and struck his bicycle; the bumper of the automobile struck him on the stomach, and the automobile ran over the bicycle, smashing it.

Mrs. Coviello, a witness for the plaintiffs, testified that she was walking on the east side of New York avenue, between Memorial and Belfield avenues; that she heard the noise of the collision, and saw Kelley lying on the ground at about the middle of the street; and that Jacoby's car was then further to his right than Kelley testified it was when the collision occurred.

Jacoby's testimony was to the effect that he was running very slowly at about 6 miles an hour upon the right side of the street; that Kelley suddenly came out of Belfield avenue and ran across to Jacoby's side of the street; that Kelley was riding directly at him; that he stopped his car instantly, but that the bicycle ran into the front of the automobile.

[1, 2] At the trial Mrs. Kelley, having been called as a witness, was questioned by her counsel concerning talks she had had with other persons concerning the case, and, having testified that she had explained to one Mr. Cooney what she knew about the case, was examined and testified as follows:

"Q. Have you seen anybody else? A. Yes; I have seen Mr. Hyer, and last night, yesterday evening, around 4 o'clock, there came a man from the—
"Mr. Corio: If your honor please.
"Q. Some man came to you about this case last night? A. Yes; of the insurance company.
"Q. What man? A. And he asked me—
"The Court: You can't go into that.
"Mr. Corio: I ask an exception and ask that a juror be withdrawn. It is highly prejudicial.
"The Court: No, I won't do that.
"(Whereupon the defendant, by his counsel, filed a bill of exceptions, which is hereby allowed and sealed accordingly.)          John Rellstab, Judge.
"The jury understands, when an objection is made and sustained, they are to leave it out of the case entirely."

There was a verdict and judgment for the plaintiffs.

The first assignment of error relates to the refusal of the trial judge to withdraw a juror because of the testimony of Mrs. Kelley, recited above, from which the jury could infer that the defendant carried au-

tomobile insurance. This court has established the rule that the refusal to withdraw a juror is reversible error in a federal court of this circuit in a case in which it would be reversible error under established ruling of the courts of the state (in that case Pennsylvania) in which the trial is had. Vaughan v. Magee, 218 Fed. 630, 134 C. C. A. 388. The case at bar was tried in New Jersey, where it is the established ruling of the state courts that the withdrawal of a juror is a matter which rests in the discretion of the trial judge and is not assignable as error. Bradley v. Cleary Co., 86 N. Y. Law, 338, 90 Atl. 1015. The learned trial judge carefully instructed the jury to leave the testimony out of the case entirely, and we find no error in his conforming to the established ruling of the state courts of New Jersey.

[3] The second assignment relates to the cross-examination of Dr. Block, a medical expert called by the defendant. Dr. Block was examined concerning an alleged injury to Kelley's liver. On cross-examination, he voluntarily introduced the subject of the kidney, whereupon he was cross-examined upon his experience in injuries to the kidney. We fail to see that the cross-examination in any manner prejudiced the defendant. Moreover, it was relevant upon the question of the qualifications of the witness as an expert.

[4] The third assignment relates to the withdrawal from the jury of consideration of evidence of amounts paid as compensation to Mrs. Kelley for her son's injuries by the telegraph company, his employer. It is not based upon any exception to the charge as required by the tenth rule of this court. It was nowhere urged in the brief of plaintiff in error, nor at the argument. Moreover, it was properly withdrawn, as it in no wise affected the direct liability of the defendant to the plaintiffs. See New Jersey Compensation Act (P. L. N. J. 1913, p. 311, c. 174) § 8, par. 23.

[5] The fourth assignment charges error in refusal to direct a verdict for defendant. The jury could find from Kelley's testimony that he was riding on the right side of the street, and that Jacoby, without warning, ran his automobile over to his (Jacoby's) left, where he had no right to be, and caused the collision. Kelley's testimony indicates that the collision occurred considerably further south on New York avenue than the point at which Mrs. Coviello testified she found him lying. Assuming that the accident occurred between Memorial avenue and Belfield avenue, and that Kelley was found by Mrs. Coviello at about the middle of the street, and that Jacoby's automobile was further to Jacoby's right than where Kelley says he was struck, yet the location of Kelley and of the automobile after the accident is not conclusive upon the question as to where the accident occurred. This is especially true, in view of Kelley's testimony as to the speed of the automobile, and as to it having run over the bicycle after the latter was struck. While there was contradictory evidence, the conclusions of fact to be drawn, bearing upon the questions of Jacoby's negligence and of Kelley's contributory negligence, were clearly for the jury to determine, and were submitted in a charge which was fair and impartial. There was no error, therefore, in the refusal of a directed verdict.

Judgment affirmed.